The United States Court of Appeals for the Federal Circuit is now open for discussion. Dr. Sainz, the United States and the Federal Court. Please be seated, ladies and gentlemen. Good morning. We have five cases this morning, four patent cases, two of them being combined for argument, and a government employee case which is being submitted under briefs and will therefore not be argued. Our first case is the Novartis Watson case 12-14-1799-1800. We'll hear from Mr. Lombardi. May it please the Court, counsel. The district court erred in dismissing the plain language of two prior art references which plainly taught the combination of the two elements that are at issue on this appeal. Not only did it teach that combination, but it actually showed that that combination had been used in those prior art references. The district court's sole reason for rejecting the obviousness defense in this case was its finding that the problem had to be expressly identified in the art. The district court arrived at its conclusions by misstating the law and misunderstanding the law of obviousness which does not require an express teaching in the prior art of a problem. It requires that there be a motivation to combine. It requires that that motivation to combine be at least implicitly available in the art, available to the person of ordinary skill in the art, but it does not require an express teaching. The district court also erred in its application of its factual findings, the clear error rule. Which references are you talking about? I'm talking about the 040 patent. I'm talking about the 040 patent, Your Honor, is the base patent, I would say. That discloses rivastigmine in a transdermal patch, but the two patents where the key errors were made or the two references were the 807 patent and the El Alman reference. Those two are where the key errors were made, and if you look at the 807, turn to the 807 patent, Your Honor, you can see that on its face that patent discloses rivastigmine RA7 as well as the use of the… As the racemate. Excuse me? As the racemate. As the racemate. That is correct, Your Honor, but the issue between the racemate and the disclosure of rivastigmine, which is one of the enantiomers, was conceded by the plaintiff's expert and also found by the court not to make a difference in the resolution of the obvious issue. But the court said there may be an antioxidant as required. And, Your Honor, it does say in the 807 patent that the antioxidant can be used as required, but the point, Your Honor, our point, and our point that we made below is that the as required merely indicates, as everybody knows and as was found by the district court below, that you don't always use an antioxidant. You don't always have an oxidation problem. The oxidation problem arises based on the environment in which the compound is placed. And when you have an oxidation problem, then you use this antioxidant. So there is a teaching here, as the district court found. Well, the district court made findings of fact, said that rivastigmine was not known to be susceptible to oxidative degradation, and neither the 807 nor the Elmalem article teach one of skill in the art that it's susceptible, that it is susceptible to oxidative degradation. Those are findings of fact. And I don't disagree that those are findings of fact, Your Honor, and they are subject to the clearly erroneous standard. But when you look at the record as a whole, and you look at those references as a whole, the conclusion is that those references teach that there is a problem with oxidation, and the solution to the problem is the addition of an antioxidant. So in Elmalem, for instance, Your Honor, there's a specific statement that all drugs that are being tested in that reference, which includes RA7, which also includes rivastigmine by the analysis that we talked about before, RA7 should be tested with an antioxidant, and it gives the purpose, it says, to prevent oxidation. That is stated on the plain language of the Elmalem reference. And so there – Is this different from the sentence that ends to prevent oxidation, which doesn't refer specifically to RA7? It says all drugs were tested along with a saline solution to prevent oxidation. That is the sentence that I'm referring to. Right, so – but I thought that what the district court said, or at least what – that the response to that is it's perfectly clear that one – in fact, the featured one of the drugs needed the antioxidants, and then if you were doing an experiment, you really had to make all variables the same, and so you needed to use the antioxidant and the saline solution for everything, not necessarily because you need it for the other ones. And so there was missing from Elmalem any teaching that for this particular drug, you needed an antioxidant. Yes. I agree and disagree, Your Honor. Let me point out, the sentence that is referred to, the sentence that precedes the sentence that you referred to, Your Honor, states the agents tested were a list of four drugs, including RA7. The next sentence says that all the drugs were made up in a freshly sterile solution and had an antioxidant to prevent oxidation. Right, but there's no – there are two possible explanations for having the antioxidant included in the solution for all of them. One is that some needed, and as long as some needed, you needed to equalize. And the other is all needed, and it doesn't really say all needed. And so why is it not within the realm of reasonable findings of fact to say, as I guess the other side's expert did actually say, that would not teach somebody that this particular one, even the RA7, let alone their pristigmine, needed. The only evidence in this entire case that you would not have – you would not be adding the antioxidant for purposes of preventing oxidation in all of those drugs was the testimony of plaintiff's expert. The plaintiff's expert clearly provided a gloss to this article that said that there is variability – there's a problem of oxidative stability with But there is absolutely nothing in this article that says that. That is a statement by the plaintiff's expert that is not supported in the record. And, in fact, when you look at the entirety of the record, the entirety of the article, what plaintiff expert argues for leads to contradictions and nonsensical statements in the El-Walman reference, which, in fact, the district court recognized in its opinion. And so, for instance, in order to accept the plaintiff's expert's position in this case, you would have to accept, as the district court did, that saline is a drug. And saline, it was the testimony at trial, was clear and unambiguous that saline is salt in water. There is nothing in the article that indicates that saline is a drug. And, in fact, in every section of this article, the statement is the drugs are things like RA-7, not saline, but you would have to accept it. So these all seem like arguments to suggest the district court was clearly erroneous in its factual finding. But I think you're making a legal argument, too, but I can't quite figure out what it is. And you're right. With respect to El-Walman, Your Honor, it is a clearly erroneous argument. On the part of the 807 patent, there is also a legal argument. And our legal argument is this, that the district court required more than the law requires from an obvious misinquiry, from an obvious misreference. And so, in that, with respect to that patent— Well, can you explain that? What does obviousness require? I mean, is this a—this is a motivation to combine issue, right? Yes. So what does KSR require, and what more do you think the district court improperly required? Well, here's what the district court improperly required. After stating that it saw reason in Watson's position below that the 807 patent disclosed a problem with oxidation, it went on to say—to point out elements that it thought cut against a finding of obviousness here. So it pointed out that there was a long laundry list of compounds that were included in the 807 patent. That is not sufficient to defeat an obviousness claim. There are cases, which we cite in our brief, like Allergan and Merck, that make clear that even if you have thousands or millions of compounds that are listed, that does not take away from the obviousness of the particular compound. In addition, the court— It doesn't even take away from it? It doesn't take away from it. It may not be conclusive. Excuse me, I'm sorry. It may not be conclusive, but it surely takes away from it. Well, not in this instance, Your Honor, where RA-7 was one of seven compounds that were called out as preferred compounds in this case. So you have RA-7, which was a preferred compound, one of seven, not one of the millions. And you also have specific antioxidants that are called out as preferred in this case as well. But in addition, Your Honor, there were other things that the court required. It looked for an example in which there was something done to show oxidative degradation or to show the effects of an antioxidant on this compound. That's not required by the law. What's required is a suggestion, a motivation to combine, and there's no rigid requirement for what that needs to be. And by the mere fact that this reference is teaching the use of an antioxidant, that is— I'm in the position that because there's a prior art reference that already combines the drug and the antioxidant, that that's enough. That's enough, particularly in this case, Your Honor, where there's something more, which is the disclosure of the combination inherently teaches the problem that's involved. So when you teach a solution in the 807 patent of using an antioxidant, the reason you use an antioxidant is to deal with an oxidation problem. That's the problem. It wasn't clear that there was a problem with rivastigmine. Isn't that the basis for the trial court's decision? It was not known to be susceptible to oxidative degradation. And our position, Judge, is that when you take the two references together, that's not true. That is not a fair reading of the record. But that's a factual conclusion, right? So that has to be clear error. Let's assume we don't find that factual conclusion clear error and that we agree that there's nothing in the prior art that shows the drug is susceptible to oxidation. Is that the end of the story for you then? No, it's not because of the legal problem with the 807. And the problem with the analysis of the 807 is the requirement of things like it can't be in a laundry list. It has to have an example. It has to have some showing of oxidative degradation, which is not a requirement of the law. The law requires that you look at the article whole and you see whether there's a suggestion for this combination. And if there is, then assuming you meet the other elements. Again, the problem here is there's a suggestion for the combination when required. So I'm having a hard time. That then leads to a factual question. Is it your position that oxidation is a common problem? So when it suggests a drug with an antioxidant that it's always obvious for a person to combine a drug with an antioxidant? I'm a little hesitant to say always, but certainly in this instance where we're familiar with it. I mean, that's a problem because that seems to go a little too far then. And it would seem to suggest that any time somebody adds an antioxidant that that's not patentable. Well, it depends how antioxidant is disclosed, I would say. But antioxidant is a description of a type of compound that has a specific purpose. It's there to prevent oxidation. You could have an antioxidant, say, as absorbic acid, which is one of the antioxidants at issue here. It could have another purpose. But when it's specifically identified as having the purpose of an antioxidant, it teaches, just by disclosing that solution, it teaches the problem itself, which is if there's an oxidation problem with rivastigmine. Mr. Lombardi, you wanted to save some rebuttal time. You're into it. Yeah, I will save my time for rebuttal. Thank you, Your Honor. All right. Ms. Jacobson. May it please the Court. On this appeal, Watson seeks to manufacture an error of law by claiming that the district court required an explicit motivation to combine the prior art. Watson is wrong. The district court did not hold that an implicit motivation was insufficient as a matter of law. Instead, the district court found as a factual matter that no motivation to combine existed. And specifically, the district court found that there was no motivation to add an antioxidant to rivastigmine in the transdermal devices in GB040. Of course, it had been disclosed that a similar compound, physostigmine, had an oxidative problem, and antioxidants had been recommended with it and disclosed with it. This patent isn't a model of coming out of the blue. I mean, it's fairly close prior art here. The problem with physostigmine was quite different. What was known about physostigmine was in an aqueous solution, it underwent hydrolysis, and then the hydrolytic degradant underwent oxidation. And that was the reason why an antioxidant was required in aqueous solution. Now, the known chemistry of carbamate compounds… Aqueous but not saline? Aqueous, including saline compounds. That wasn't a distinction. But the known chemistry of carbamate compounds like RA7 and physostigmine indicated that by converting the drug from a monomethyl carbamate like physostigmine to a dialkyl carbamate like RA7 would have solved the hydrolysis problem. And so there was no suggestion in the art that rivastigmine or RA7 would undergo the same type of degradation, would have the same stability problem as physostigmine. So there was no suggestion that it required an antioxidant for the same reason as physostigmine. And that's why the disclosure said, if needed? That's certainly one reason. But as required in the 807 patent, it's important to note that that teaching is not specific to RA7. In fact, it's not specific to any of the 8 million plus compounds disclosed in the 807 patent. And in fact, when it comes to RA7, the 807 patent says that it has greater chemical stability, and it prepared RA7 without an antioxidant. And indeed, that's true of all of the references that discuss RA7 or rivastigmine. Mr. Lombardi talked about seven compounds. Well, there's seven, or it's actually eight. But there is a limited number of preferred compounds of the invention in the 807 patent. That's correct. But there's nothing to tie the preferred compounds of the invention from a therapeutic point to the disclosure of antioxidants on the other hand. And in fact, as I was saying, the opposite is true. Because those eight preferred compounds of the invention, from a therapeutic standpoint, were the ones that the 807 patent expressly disclosed as having greater chemical stability than the prior art, and that they prepared without an antioxidant. Is there almost a teaching away? Or is it simply lack of motivation to combine? This is a case where there was no motivation to combine. And the district court made express findings of fact that one, a person of ordinary... You're saying there's no motivation to combine the patch form of the drug with an antioxidant. But why is that the right question? Because the 807 patent certainly discloses RA7 with an antioxidant as needed. So why isn't RA7 already combined with an antioxidant in that reference? Well, the reason that the right question is whether the motivation would have been to combine rivastigmine with an antioxidant in a transdermal patch is because the starting point for Watson's obviousness analysis is the rivastigmine transdermal devices in Gb040. And so the question is, would a person of ordinary skill in the art have been motivated to modify those formulations by adding an antioxidant? But if the 807 already taught that rivastigmine might need an antioxidant, then why doesn't that in itself suggest a motivation to combine the drug with an antioxidant? It doesn't suggest that their motivation existed because it was undisputed that degradation is formulation specific. And the stability of a drug in a formulation cannot be predicted in advance. And instead, testing is required. So does your legal argument lead to the conclusion that any time somebody adds an antioxidant to a previous formulation, a compound, or some kind of method, that that is a patentable advancement? Well, in this case, it was a patentable advancement because the problem was not known or suggested in the pilot. So hypothetically, suppose we have a drug that shows there's a compound that, even like here, you could use it with an antioxidant, but it doesn't say it's subject to degradation or doesn't say it's required. It says it may be required. And then you come up using that drug in some kind of new delivery system, and you add an antioxidant. Is every single instance where all you do is take something that's known in the art and add an antioxidant to it a patentable improvement? Your Honor, I think that's a question of fact, and it depends on the evidence in the case. And in this case, the problem was not known or suggested, and the district court made that a patentable advancement. So your view is any time somebody hasn't specifically found that a drug is subject to oxidation in a particular format, that adding an antioxidant is patentable? It would depend on the facts of the case. Well, those are the facts. The facts are there's a finding that there's no teaching in the prior art that the specific formulation is subject to oxidation, and you've added an antioxidant. Well, then I think similar to the facts of this case, the conclusion would be that the invention is not obvious. And this court has already addressed the issue in, for example, Omeprazole and in Leo, where the court found that because the problem was not known or suggested in the prior art, there was no motivation to modify the prior art to address that stability problem. And indeed, just as in Omeprazole and in Leo, in this case— And by saying that the problem wasn't known in the prior art here, you're saying that nobody specifically said the drug was subject to oxidation, even though they said it may be used with an antioxidant as required. Well, the prior art doesn't say that it may be used with an antioxidant. The 807 patent says that an antioxidant may be added to the 8 million plus compounds of the invention in sterile compositions for injection as required. And so that as required language indicates that an antioxidant may not be required. And indeed, when formulating the RA7 into compositions, the inventors of the 807 did not add an antioxidant to RA7, suggesting that in the case of RA7, the antioxidant was not required. And that's consistent with the prior art as a whole, where every reference that mentions RA7 and rivastigmine indicates that it has greater chemical stability and formulates it without an antioxidant. Now, which findings of fact of the district court do you think most strongly support your case that are not clearly erroneous? Well, the district court found that one, a person of ordinary skill would not have added an antioxidant unless one was required. In other words, we don't do an unnecessary thing. We don't load up a formulation with something not necessary. Exactly, Your Honor, because as the district court recognized, there are many different types of degradation. And not all drugs undergo all types of degradation in all formulations. There can be hydrolysis as well as oxidation. Right, erasmization, pyrolysis. There was a long list of different types of degradation that can occur. And so a person of ordinary skill in the art doesn't try to solve an unknown stability problem. Instead, they only set out to solve known stability problems. And then two, the district court found, as a factual matter, that none of the prior art taught or reasonably suggested that rivastigmine undergoes oxidative degradation or requires an antioxidant in those transdermal devices in GbO4L. Can I ask you, do you disagree with the district court's statement that the 807 patent does disclose the addition of an antioxidant to RA7? Well, the district court's opinion has to be read as a whole. And as the district court went on to discuss, the teaching is limited to sterile compositions for injection, and it is only as required. And as the district court also recognized, that teaching is not specific to RA7. It applies to the millions of compounds of the invention disclosed in the 807 patent. And so the district court's ultimate conclusion was based on the reading of the 807 patent as a whole. And that's legally the correct approach. Your Honor, just to pick up on a couple of points raised by Mr. Lombardi, he alluded to cases such as Merck. What sets this case apart from Merck or from Pericode or other cases of that nature that Watson cites is the as-required language. You see, in those cases, the prior art required the claimed ingredient to be present in the prior art composition. And as such, the issue in those cases is whether it would have been obvious to select the claimed species of the ingredient from the genus disclosed in the prior art. That's not the issue here. Here, the issue is whether there would have been a motivation to combine the ingredients in the first place. And specifically, whether there would have been a motivation to combine an antioxidant with rivastigmine in a transdermal device. And counsel also raised that the teaching of the solution suggested the problem. And I think he's alluding to the scientific plastic products case. And this case is also different from scientific plastic products. Because in that case, the leaking problem that was addressed by the patented issue was suggested in the prior art because the prior art disclosed the claimed cartridge actually combined with an O-ring seal for the purposes of ensuring liquid tightness. And that was enough to suggest that the leaking problem actually existed with the claimed cartridge. Here, the disclosure that antioxidants could be incorporated as required with the millions of compounds in the 807 patent in sterile compositions for injection would not have suggested to a person of ordinary skill in the art the oxidative degradation problem with RA7 or rivastigmine in a transdermal device. And likewise, the addition of an antioxidant to RA7 in Elmolem was not sufficient to suggest to a person of ordinary skill that oxidative degradation existed as a problem with RA7 in the transdermal. Because a person of ordinary skill reading Elmolem and the prior art as a whole, including the subsequent paper by the authors of Elmolem, in which they did not add an antioxidant to rivastigmine, would have indicated to a person of ordinary skill that the antioxidant was indeed added as a control and not to solve a known stability problem with RA7. And that wasn't the case in scientific plastic products. There was no other explanation for the O-ring seal than to ensure liquid tightness. And that's why the disclosure of the solution suggested the existence of the problem in that case. Now, is only claim 7, at least in the 031 patent, at issue? That's transdermal. Claim 1 is more generic to a pharmaceutical composition. I don't think that has a transdermal limitation. That's correct, Your Honor. But the issue here is whether a person of ordinary skill in the art would have been motivated to modify the starting point of Watson's obviousness analysis, which is a transdermal device. And so the question is whether there was a motivation to modify a transdermal, not whether there was a question to modify any other formulation. But saying that, there was no indication that rivastigmine or RA7 underwent oxidative degradation in any formulation. Unless you have any more questions, I'm almost out of time. Thank you, Ms. Jacobson. I appreciate your argument, Mr. Lombardi. Two and a half minutes of rebuttal time. Thank you, Your Honor. With respect to the 807 patent and the as required, both the court and plaintiffs at trial stated that a person of ordinary skill in the art would not have added an antioxidant unless required to do so. And Your Honor made reference to that in, I think, your question about not loading up a compound with something that's not necessary. That's the context in which the 807 patent needs to be read because they wouldn't be talking about an antioxidant being used as required unless there was a need for an antioxidant to be used. And when they say as required, all that means, Your Honor, is that it's required not in every situation. You have to determine the particular situations in which it's used. In other words, maybe.  And it's a recognition and a suggestion. And a suggestion is required. And if there's any doubt about the 807 patent, it's cleared up by L Allman, which specifically states that RA7 will be used with an antioxidant. For what reason? It specifically says to prevent oxidation. And when you put these two references together, you put the two references together, there's a very clear teaching by the prior art on the face of the prior art that there is a need for an antioxidant to address the problem of oxidation. And that is, in sum, the reason that we say that there is clear error here. And a note about clear error, obviously, Your Honor, we don't deny that there was an expert on the other side that the district court found to be credible. But the credibility finding here was very limited. And I suggest a very limited use for the court in resolving this issue. A district court can't hide behind a finding of credibility to avoid a clear error review. And ultimately, this case comes down to whether what the district court found is actually supported in the references here. And the district court's findings here are not supported by the references. They are reliant on and without really any explanation and by the concession of the district court, no scientific explanation of the testimony of the expert witness. So what you are left with in this case, Your Honors, is a situation where there is a clear disclosure of the use of rivastigmine and an antioxidant. And the only issue is, is there something lacking in the way of motivation? But the question of motivation is specifically answered by the use of an antioxidant in the 807 patent. And it's specifically and expressly stated in El Alman when it says that the use of the antioxidant is for purposes of preventing oxidation. Thank you very much. Thank you, Mr. Lombardi. The case will be taken under advisement.